P-Send "D"

FILED - SOUTHERN DIVISION
CLERK, U.S. DISTRICT COURT

AUG 17 2006

CENTRAL DISTRICT OF CALIFORNIA
BY                          DEPUTY

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| WILLIAM COLON MIRANDA, | Case No. CV 06-2032-RGK (MLG) |
| Petitioner, | REPORT AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE |
| v. | |
| G.J. GIURBINO, Warden, | |
| Respondent. | |

I.   **Factual and Procedural Background**

On June 27, 2004, between 4:00 and 4:30 pm, Emmanuel Muro was walking on Pacific Avenue in Long Beach, California, when Petitioner, William Colon Miranda, approached him and asked for a cigarette. (Lodgment 9, Reporter's Transcript ("RT") at 39). When Muro replied that he did not have one, Petitioner pulled out a gun, pointed it at Muro's chest, and demanded that Muro hand over all of his money. (RT at 40, 45). Petitioner warned Muro that he "wasn't playing." (RT at 45). Muro stood still and remained silent. (Id.)

\\

DOCKETED ON CM

AUG 17 2006

BY                    040

1    Albert Castillo, Petitioner's co-defendant, then approached Muro
2    and poked him in the right-side of his abdomen with a screwdriver.
3    (RT at 46).  Petitioner told Castillo to "have him give you all the
4    money."  (RT at 50).  Muro surrendered $80 to Castillo and a gold
5    ring to Petitioner. (RT at 51).  Petitioner then asked Muro whether
6    that was all the money he had, and ordered him to "[t]ake out
7    everything" because "we're not playing" and "[y]es, I already was in
8    jail for having shot somebody." (Id.).  Petitioner then took Muro's
9    cellular telephone. (Id.).  Muro asked for his cell phone back, but
10   Petitioner refused, and told Muro they were taking the phone so Muro
11   could not call the police.  (RT at 52).  Petitioner then warned Muro
12   that "if [he] said something, they would do something to [him]."
13   (Id.).  Petitioner and Castillo then left on foot. (RT at 54).  Muro
14   walked to his girlfriend's house and called the police.  (Id.).

15       A few days later, Muro saw Petitioner in an alley near 16th
16   street in Long Beach, approximately one traffic light away from the
17   scene of the robbery.  (RT at 56-57).  Muro went to a pay phone and
18   called the police.  (RT at 56).  A Long Beach Police Sergeant met
19   Muro on the street and Muro then led the officer to the alley where
20   he had spotted Petitioner. (RT at 57). As they searched the alley,
21   Muro saw Castillo sitting in a vehicle.  (RT at 58).  Muro identified
22   Castillo as one of the men involved in the robbery and Castillo was
23   detained.  (RT at 57-58, 105-09).  A second Long Beach Police Officer
24   arrived to assist and searched Castillo.  (RT at 58, 112-14).  That
25   search revealed a cellular phone in Castillo's pocket which Muro
26   recognized as his.  (RT at 59, 68).

27       On July 6, 2004, Muro identified Petitioner as the gunman from
28   a six-pack photographic lineup.  (RT at 61-66, 120-22).  Petitioner

1  was arrested on July 8, 2004. (RT at 129). The firearm used in the
2  robbery was never recovered. (RT at 132).

3      On November 24, 2004, a Los Angeles Superior Court jury found
4  Petitioner guilty of second degree robbery (Cal. Penal Code ("CPC")
5  § 211) and dissuading a witness by force or threat (CPC §
6  136.1(c)(1)). (Lodgment 1, Clerk's Transcript ("CT") at 123-24).
7  The jury also found that during the commission of both felonies,
8  Petitioner had personally used a firearm within the meaning of CPC
9  § 12022.53(b) and was a "principal" armed with a firearm in violation
10 of CPC § 12022(a)(1). (CT at 123-24). Petitioner also admitted to
11 having served five prior prison terms for felony convictions within
12 the meaning of CPC § 667.5(b). Petitioner was sentenced to 18 years
13 in prison. (CT at 250).

14     On October 27, 2005, the California Court of Appeal affirmed
15 Petitioner's conviction and sentence. *People v. Alberto Riveros*
16 *Castillo et. al.*, No. B180156 (California Court of Appeal)
17 (unpublished opinion) (Lodgment 9). On January 25, 2006, the
18 California Supreme Court denied review. (Lodgment 8).

19     On April 4, 2006, Petitioner filed this petition for Writ of
20 Habeas Corpus ("Petition") pursuant to 28 U.S.C. § 2254. Petitioner
21 alleges that there was insufficient evidence to support the finding
22 that he personally used a firearm within the meaning of CPC §
23 12022.53(b). (Petition at 3).

24     Respondent filed an answer, but Petitioner did not file a reply.
25 The case is now ready for decision.
26 \\
27 \\
28 \\

## II. **Standard of Review**

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2254(d), a federal court may grant a writ of habeas corpus to a state prisoner with respect to a claim that was adjudicated on the merits in state court only if the state courts' decisions were "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or if the ruling was "based on an unreasonable determination of the facts in light of the evidence presented" in the state courts.

A state court decision is "contrary to" clearly established federal law if the state court failed to apply the correct controlling authority from the Supreme Court. *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000). The Supreme Court explains that a state court decision is "contrary to" clearly established federal law if the state court "applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases" or if it "confronts a set of facts that are materially indistinguishable from a decision of this Court and nevertheless arrives at a result different from our precedent." *Early v. Packer*, 537 U.S. 3, 8 (2002)(quoting *Williams*, 529 U.S. at 405-06). A state court need not cite or even be aware of Supreme Court precedents, "so long as neither the reasoning nor the result of the state-court decision contradicts them." *Mitchell v. Esparza*, 540 U.S. 12, 16 (2003)(citing *Packer*, 537 U.S. at 7).

A state court decision involves an "unreasonable application of" clearly established federal law if the state court identifies the correct governing legal principle from the decisions of the Supreme Court, but unreasonably applies that principle to the facts of the

4

case. *Williams*, 529 U.S. at 407-08, 413.  Under this standard, a habeas court may not issue the writ simply because that court concludes "in its independent judgment" that the state court decision is incorrect or erroneous. *Williams*, 529 U.S. at 410, 412; *Woodford v. Visciotti*, 537 U.S. 19, 24-25 (2002).  The reviewing court must find that the state court's application of clearly established law was objectively unreasonable. *Williams*, 529 U.S. at 409.

A state court decision is based on an unreasonable determination of the facts if "an appellate panel, applying the normal standards of appellate review, could not reasonably conclude that the finding[s] [are] supported by the record." *See Taylor v. Maddox*, 366 F.3d 992, 1000 (9th Cir.), *cert. denied*, 125 S.Ct. 809 (2004).  Once a state court's fact-finding process survives an "unreasonable determination" challenge, the state court's findings of fact are presumed to be correct. *Id.*; 28 U.S.C. § 2254(e)(1).  To overcome this presumption, a habeas petitioner must show by clear and convincing evidence that the state court's factual findings were in error. *See* 28 U.S.C. § 2254(e)(1); *Taylor*, 366 F.3d at 1000 ("State-court fact-finding may be overturned based on new evidence presented for the first time in federal court only if such new evidence amounts to clear and convincing proof that the state-court finding is in error").

The claim raised in the instant Petition was raised before the California Supreme Court, but that court did not issue a written opinion. (Lodgment 7, 8).  Nevertheless, "[w]here there has been one reasoned state judgment rejecting a federal claim, [federal courts are to presume] later unexplained orders upholding that judgment or rejecting the same claim rest upon the same ground." *Ylst v.*

1  *Nunnemaker*, 501 U.S. 797, 803 (1991). The California Court of Appeal
2  rejected the claim raised in the Petition in a written decision.
3  (Lodgment 6). Thus, this Court will consider the reasoning of the
4  California Court of Appeal to determine whether the California
5  Supreme Court's decision is contrary to, or an unreasonable
6  application of, federal law.

7

8  **III.   Analysis**

9      **A. Sufficiency of the Evidence**

10     Petitioner alleges that there was insufficient evidence to
11 support his conviction for personal use of a firearm under CPC §
12 12022.53(b). Specifically, Petitioner contends that the evidence was
13 insufficient to prove that he brandished a firearm, as opposed to a
14 toy gun or a replica.

15     Under the Due Process Clause of the Fourteenth Amendment, a
16 defendant cannot be convicted of a crime unless he has been found
17 guilty of every fact necessary to establish the crime beyond a
18 reasonable doubt. *See In re Winship*, 397 U.S. 358, 365 (1970). The
19 legal standard for evaluating constitutional claims of insufficiency
20 of the evidence was clearly established by the Supreme Court in
21 *Jackson v. Virginia*, 443 U.S. 307 (1979). There, the Court held that
22 in a challenge to a state criminal conviction brought under 28 U.S.C.
23 § 2254, "the applicant is entitled to habeas corpus relief if it is
24 found that upon the record evidence adduced at the trial no rational
25 trier of fact could have found proof of guilt beyond a reasonable
26 doubt." *Jackson*, 443 U.S. at 324; *See also Turner v. Calderon*, 281
27 F.3d 851, 881-82 (9th Cir. 2002). The habeas court's task is not to
28 determine whether it believes that the evidence at the trial

6

established guilt beyond a reasonable doubt. *Id.* at 318-19.   In
making its analysis, the court must respect the province of the jury
to determine the credibility of witnesses, resolve conflicts in the
testimony, weigh the evidence and draw reasonable inferences from
proven facts. *Id.* at 319.   In addition, the court is not required to
affirmatively rule out every hypothesis except that of guilt. *Id.* at
326.   The role of the habeas court is simply to determine whether,
after viewing the evidence in the light most favorable to the
prosecution, any rational trier of fact could have found the
essential elements of the crime beyond a reasonable doubt. *Id.* at
319; *Turner*, 281 F.3d at *id.*

The *Jackson* standard must be applied with explicit reference to
the substantive elements of the criminal offense as defined by state
law. *Jackson*, 443 U.S. at 324, n.16.   Moreover, on habeas review the
court must apply the *Jackson* standard "with an additional layer of
deference."   *Juan H. v. Allen*, 408 F.3d 1262, 1274 (9th Cir. 2005).
The court must ask "whether the decision of the California Court of
Appeal reflected an 'unreasonable application of' *Jackson* to the
facts of this case."   *Id.* at 1275.

CPC § 12022.53(b) imposes a sentence enhancement of 10 years
when, during the commission of a [robbery], a person "personally uses
a firearm."   The firearm "need not be operable or loaded for this
enhancement to apply."   CPC § 12022.53(b).   For purposes of this
section, a firearm means "any device, designed to be used as a
weapon, from which is expelled through a barrel a projectile by the
force of any explosion or other form of combustion." CPC § 12001.

The California Court of Appeal held that the evidence was
sufficient to establish Petitioner's personal use of a firearm beyond

a reasonable doubt. Relying on a series of analogous cases[1] addressing the sufficiency of the evidence required under similar firearm enhancement provisions, the Court found that the issue of whether the defendant personally used a firearm, and whether the object used was in fact a gun, are factual questions for the jury. When the firearm is not recovered, the testimony of the victim is sufficient to support a personal use count. Moreover, "[t]he character of the weapon may be shown by circumstantial evidence," including "testimonial descriptions of the weapon and its role in the commission of the crime" from which the jury may draw a reasonable inference that the firearm use allegation is true. (Lodgment 9 at 5).

Here, the only evidence presented by the prosecution to prove that Petitioner personally used a firearm during the commission of the robbery was the testimony of Muro himself. The firearm brandished by Petitioner was never recovered. Muro testified that he did not own a gun, but that he was familiar with handguns from photographs, television, and books. (RT at 40). Muro also testified as to the difference between a revolver and a semiautomatic, and demonstrated his ability to do so during his testimony. (RT at 40-41). When asked to describe the gun pointed at him by Petitioner, Muro stated that it was "more or less black" and "more or less the same size" as the semiautomatic handgun displayed by the

---

[1] *People v. Dominguez*, 38 Cal.App.4th 410, 421 (1995) (CPC § 12022.5(2)); *People v. Williams*, 56 Cal.App.3d 253, 254-55 (1976) (CPC § 12022.5); *People v. Hayden*, 30 Cal.App.3d 446, 451-52 (1973) (CPC § 12022.5), overruled on other grounds by *People v. Rist*, 16 Cal.3d 211 (1976); *People v. Aranda*, 63 Cal.2d 518, 533 (1969)(CPC § 3024) (statute repealed 1976).

1 investigating officer in court.  (RT at 42).  Muro also recounted how

2 Petitioner, standing less than three feet away and pointing a gun to

3 his chest, warned that he "wasn't playing" and that he had already

4 been to jail for shooting someone.  (RT at 45, 51).

5     During closing argument, defense counsel argued that the

6 prosecution had not proven beyond a reasonable doubt that the gun was

7 real. (Rt at 164-5).  The jury had the opportunity to evaluate this

8 argument and rejected it.  This finding was clearly supported by

9 Muro's testimony concerning the gun and the manner in which it was

10 used.

11     The California Court of Appeal found that Muro's testimony

12 "constituted substantial evidence that amply supports the jury's

13 determination that [Petitioner] used a "firearm" during the robbery"

14 within the meaning of CPC §§ 12001 and 12022.53.  (Lodgment 9).  This

15 Court finds that the Court of Appeal's conclusion was a reasonable

16 application of *Jackson* to the facts of this case.  Accordingly,

17 habeas relief is not warranted.

18

19 **IV.  Recommendation**

20     For the reasons stated above, it is recommended that the

21 Petition be **DENIED**.

22 DATED: August 16, 2006

23

24

25                                    Marc L. Goldman
                                     United States Magistrate Judge

26

27

28